UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

JOSEPH ANTHONY FAVORS,

    Petitioner,

v.

LUCINDA JESSON,

    Respondent.

Civil No. 13-108 (JRT/LIB)

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge on Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 6.[1]) The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, it is recommended that this action be summarily dismissed without prejudice pursuant to Rule 4 of The Rules Governing Section 2254 Cases In The United States District Courts.[2]

**I. BACKGROUND**

---

[1] The Court previously found several critical flaws in Petitioner's original habeas corpus petition, (Docket No. 1), and he was ordered to file an amended petition if he intended to pursue this matter. (<u>See</u> Order dated January 23, 2013, [Docket No. 3].) In response to that order, Petitioner filed the amended habeas corpus petition, (Docket No. 6), that is now before the Court.

[2] Rule 4 provides that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Petitioner has a long history of sexually abusing women and girls.  See In re: Civil Commitment of Favors, No. A09-2306 (Minn.App. 2010), 2010 WL 2486349 (unpublished opinion) at 1-2, rev. denied, Aug. 24, 2010.  In 1996, he was accused of holding two teenage girls in a trailer for a week, and impregnating one of them after repeatedly having sex with her.  Id.  In that case, Petitioner pled guilty to third-degree criminal sexual conduct and solicitation of a child under age eighteen to engage in prostitution, and he was sentenced to 90 months in state prison.  Id.  On several occasions thereafter, Petitioner was granted supervised release from prison.  However, he repeatedly violated the conditions of his supervised release, and was repeatedly returned to prison.  Id.

In August 2008, Petitioner was once again scheduled for supervised release from prison.  Before he was released, however, a civil commitment action was brought against him in Dakota County, Minnesota.  Id.  Petitioner was determined to be a "sexually dangerous person" and "a sexual psychopathic personality" under Minnesota law, and he was committed to the Minnesota Sex Offender Program, (MSOP), for an indeterminate term.  Id., at *3.  Petitioner's civil commitment was later upheld by the Minnesota Court of Appeals.  Id., at *8.

In November 2008, Petitioner was once again granted a supervised release from prison subject to a broad array of conditions.  Favors v. Jungers, Nos. A11-2055, A11-2104, (Minn.App. 2012), 2012 WL 2079848 (unpublished opinion) at * 1, rev. denied, Aug. 21, 2012, [hereafter "Favors"].  At that time, Petitioner was transferred to the MSOP in Moose Lake, Minnesota, pursuant to the judgment entered in his civil commitment case.  Id.

On several occasions between December 2009 and May 2010, Petitioner reported

2

to MSOP officials that an MSOP employee named Hoover was engaged in an inappropriate relationship with another MSOP patient/detainee. Id. Hoover, in turn, accused Petitioner of stalking her. Id. Petitioner was informed that Hoover was under investigation, and he should not continue to pursue his own private investigation, but Petitioner did not heed that direction. Id.

In July 2010, Petitioner was accused of violating the conditions of his supervised release from prison, by stalking and harassing Hoover. After a hearing, Petitioner's supervised release was revoked, and he was returned to prison. Id. Petitioner was required to serve out the remainder of his state prison term at the Minnesota Correctional Facility in Stillwater, Minnesota, ("MCF-STW"). Petitioner's prison sentence was fully expired in February 2011, and he was then transferred back to MSOP in Moose Lake. Id. As far as the Court can tell, Petitioner has remained at MSOP in Moose Lake at all times since February 2011, and he is no longer subject to any continuing conditions of supervised release, because his state prison sentence has been fully served.

On or about February 7, 2011, four days before Petitioner was transferred from MCF-STW back to MSOP, he filed a state habeas corpus petition in the state district court for Washington County, Minnesota, (where MCF-STW is located). In that petition, Petitioner contended that his supervised release had been wrongly revoked, and he had been wrongly returned to prison. Petitioner claimed that his accusations against Hoover were true, and that Hoover and other MSOP officials had violated his federal constitutional rights by falsely accusing him of stalking and harassing Hoover.

Petitioner's state habeas corpus petition was assigned to Washington County District Court Judge Elizabeth H. Martin, and she directed the named respondents to file a

response to the petition. Incorrectly, and without explanation, the respondents filed their response in Carlton County, where MSOP is located, rather than in Washington County. Id., at *2. Compounding the respondents' error, a judge in Carlton County entered an order on September 14, 2011, which purported to dismiss Petitioner's state habeas corpus petition – even though Petitioner had no case pending in Carlton County at that time. Id. The habeas case purportedly was dismissed for "lack of subject-matter jurisdiction," and because Petitioner's "constitutional challenges to the commitment" were "without merit." Id.

A few days later, (September 19, 2011), Judge Martin entered an order in the Washington County case, where Petitioner's habeas corpus petition actually was still pending. Id. Petitioner has submitted a copy of that order in support of his current federal habeas corpus petition. (Amended Habeas Corpus Petition, [Docket No. 6], "Exhibit 9," [Docket No. 6-2], [hereafter "Martin Order"].[3])

Judge Martin found that Petitioner's state habeas corpus petition presented two distinct sets of claims. First, Petitioner was challenging the revocation of his supervised release, the reinstatement of his state prison sentence, and his return to state prison. Second, Petitioner was challenging his ongoing civil commitment at MSOP. In Petitioner's second set of claims, he contended that his civil commitment should be vacated, and he should be released from his MSOP confinement, because (i) Hoover and other MSOP employees violated his constitutional rights during the various events and

---

[3] It appears to the Court that the order attached to the amended habeas corpus petition might have been modified by someone, and the Court does not vouch for its absolute authenticity. For present purposes, however, the Court accepts the copy of the order submitted by Petitioner as being substantially accurate and complete.

4

proceedings that culminated in his return to prison, and (ii) he was subjected to renewed retaliation and harassment at MSOP after he was returned to MSOP following his last release from prison.

Judge Martin ruled that Petitioner's first set of claims, pertaining to the revocation of his supervised release and his return to prison, had become moot, because his prison sentence had expired. Judge Martin's order explained that --

> "Because Petitioner is no longer confined at the Stillwater prison, the Court is unable to grant Petitioner's immediate release from custody on any alleged illegality, even if this Court were to find such a remedy appropriate. Petitioner has served his time and is no longer subject to DOC custody, as Petitioner's criminal sentence ended on February 11, 2011, and [he] is therefore no longer subject to supervised or conditional release."

(Martin Order, p. 6, ¶ 3.)

Judge Martin declined to reach the merits of Petitioner's other claims, pertaining to his ongoing civil commitment at MSOP. The Judge intimated, however, that those claims might warrant further review, because in May 2011, Hoover had been charged with several felonies under Minnesota law, "arising out of her conduct with a patient at MOSP [sic] - Moose Lake who had been identified on numerous occasions in the complaints to staff by Petitioner and which complaints led in part to the conclusion that Petitioner had been stalking and harassing Respondent Hoover." (Martin Order, p. 5, ¶ 18.) In other words, it appeared to Judge Martin that Petitioner's supposedly false accusations against Hoover, which contributed to the revocation of his supervised release, were <u>not</u> entirely false after all. Judge Martin's order states that "[g]iven the sequence of events leading to [the] revocation of Petitioner's conditional release, Petitioner may very well have a cognizable retaliation claim." (Martin Order, p. 6, ¶ 4.) The order further states that

5

"[e]ven though the Court is dismissing Petitioner's Habeas Petition with respect to his confinement in Stillwater prison, the Court also notes that Petitioner is not precluded from pursuing an action under 42 U.S.C. 1983." (Martin Order, p. 7, ¶ 5.)[4]

But again, Judge Martin specifically declined to reach the merits of any claims presented in Petitioner's state habeas corpus petition that pertained to his ongoing confinement at MSOP. The Judge concluded that any such claims should be entertained and decided in the county in which Petitioner was then being detained, namely Carlton County, where MSOP/Moose Lake is located. Thus, to the extent that Petitioner was seeking release from MCF-STW, his claims were dismissed as moot, because his sentence had expired and he had been released from prison. All other claims raised in Petitioner's state habeas corpus petition – i.e., all challenges to Petitioner's ongoing confinement at MSOP – were transferred to Carlton County. (Martin Order, p. 7, ¶s 1 and 2.)

Petitioner then took his state habeas corpus case to the Minnesota Court of Appeals. He appealed both Judge Martin's order, and the anomalous dismissal order that had been previously entered in Carlton County.

---

[4] The Court notes that Petitioner recently commenced such an action in this District. See Favors v. Hoover, Civil No. 13-428 (JRT/LIB).

The Minnesota Court of Appeals first vacated the Carlton County dismissal order because Petitioner's state habeas corpus case was not pending in Carlton County when that order purportedly was entered. Petitioner's state habeas corpus case, (to the extent that it was not dismissed by Judge Martin), was not transferred to Carlton County until <u>after</u> the anomalous dismissal order was entered. Therefore, the Carlton County dismissal order was declared to be wholly "ineffective and void." Favor, 2012 WL 2079848 at *3. Judge Martin's order, on the other hand, was fully upheld on appeal. The Court of Appeals initially held that Judge Martin "did not err by denying [Petitioner's] challenge to incarceration at DOC-Stillwater as moot." Id. at *4. In addition, the Court of Appeals, like Judge Martin, determined that Petitioner's state habeas corpus petition "also sought release from confinement at MSOP - Moose Lake based on his assertion that he suffered cruel and unusual punishment at the hands of MSOP staff." Id. The Court of Appeals affirmed Judge Martin's ruling that those claims – i.e., Petitioner's "claim for release from commitment" – should be transferred to Carlton County. Id. The Court of Appeals explained that --

> "Although [Petitioner] was detained in Washington County when he filed the petition, he is no longer detained there, and, under the plain language of the statute, the Washington County district court no longer has authority to exercise its power over [Petitioner's] challenge to his detention at MSOP - Moose Lake. Under the circumstances of this case, the Washington County district court did not abuse its discretion or err as a matter of law by transferring [Petitioner's] remaining claims to Carlton County."

Id. The Minnesota Supreme Court denied Petitioner's application for further review of the Court of Appeals' decision.

Petitioner is now seeking federal habeas corpus review of his ongoing

7

confinement at MSOP. Unfortunately, the claims presented in the current petition are not clearly articulated.[5] It seems reasonably clear, however, that Petitioner believes Hoover and other MSOP employees violated his federal constitutional rights during the proceedings that caused him to be returned to prison in 2010. He also seems to believe that MSOP employees have continued to violate his constitutional rights since he returned to MSOP in February 2011. Petitioner repeatedly asserts that Hoover and others "retaliated" against him, and violated his Eighth Amendment rights by subjecting him to "cruel or unusual abuse." Petitioner therefore appears to conclude and believe that if his constitutional rights were violated during his confinement at MSOP, (as he claims), then as a consequence he must necessarily be released from MSOP.

However, Petitioner's constitutional challenges to his continuing MSOP confinement have not yet been heard and decided on the merits by the Minnesota state courts (i.e., Carlton County). Therefore, the present action must be summarily dismissed, without reaching the merits of Petitioner's current challenges to his MSOP

---

[5] The grounds for relief listed in Petitioner's amended habeas corpus petition, repeated verbatim, are as follows:

Ground One: "Direct and personal harm to Petitioner while civilly committed by wrongful imprisonment for retaliation and cruel or unusual abuse." (Amended Petition, [Docket No. 6], p. 6.)
Ground Two: "Two months isolation for retaliation and cruel or unusual abuse under pretext of 'investigation.'" (Id., p. 8.) **[continued....]**
Ground Three: "Ongoing cruel or unusual abuse at the hands of MSOP staff, when placed in isolation for 21 days that was authorized by no provision of law, regulation or policy." (Id., p. 9.)
Ground Four: "Direct and personal harm to Petitioner by wrongful discharge from treatment for retaliation, denial of appropriate or any treatment for about nine months, as applied to Petitioner." (Id., p. 11.)

confinement.[6]

---

[6] Petitioner cannot presently challenge his <u>past</u> confinement in state prison, nor can he challenge the enforceability of any <u>past</u> ruling that revoked his supervised release and returned him to prison. To maintain a federal habeas corpus action, the petitioner must be "in custody" when the petition is filed, pursuant to the state court ruling that is being challenged by the petition. 28 U.S.C. § 2254(a). <u>See</u> <u>Maleng v. Cook</u>, 490 U.S. 488, 490-91 (1989) (<u>per</u> <u>curiam</u>) (a "habeas petitioner [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed"). The statutory "in custody" requirement precludes Petitioner from seeking federal habeas review of any past prison confinement, or any order or judgment effecting such confinement. <u>See</u> <u>Charlton v. Morris</u>, 53 F.3d 929, 929 (8th Cir.) (<u>per</u> <u>curiam</u>) ("District Court was without jurisdiction to address the merits of... section 2254 petition because [the petitioner]... was no longer 'in custody' for his state conviction"), <u>cert</u>. <u>denied</u>, 516 U.S. 926 (1995).

## II. DISCUSSION

It is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state detainee unless he has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged errors raised by state detainees. O'Sullivan, 526 U.S. at 844; Rose, 455 U.S. at 518-19; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam). To satisfy the exhaustion of state court remedies requirement, a state prisoner or other detainee must fairly present his or her claims to the highest available state court before seeking relief in federal court. O'Sullivan, 526 U.S. at 845.

The United States Supreme Court has explained the exhaustion of state court remedies requirement as follows:

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'... [Citations omitted.] To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. [Citations omitted]."

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

In this case, the Minnesota state courts have not yet ruled on Petitioner's current challenges to his MSOP confinement. It appears that Petitioner tried to bring his current claims for relief in his state habeas corpus petition. However, the original state court judge, Judge Martin, sitting in Washington County, expressly declined to consider any claims challenging Petitioner's ongoing MSOP confinement. All such claims were transferred on jurisdictional grounds to Carlton County. Petitioner has not explained what happened to his claims that were transferred to Carlton County, but he certainly has not shown, or even suggested, that any of those claims have been fully adjudicated on the merits in Carlton County. It is even more clear that Petitioner has not fully exhausted his state court remedies for any of those claims by presenting them to the state appellate courts.

Petitioner would undoubtedly contend that he _tried_ to present his constitutional challenges to his MSOP confinement in his recently completed appeal, i.e., the appeal reported in Favors, 2012 WL 2079848. However, the merits of Petitioner's current challenges to his MSOP confinement were not before the Minnesota Court of Appeals in that appeal, and those challenges were not addressed on the merits in that appeal. All of Petitioner's legal challenges to his ongoing confinement at MSOP were transferred to the Carlton County District Court before his appeal was undertaken. Furthermore, the Minnesota Court of Appeals expressly upheld the trial court's transfer order, thereby confirming that Petitioner's challenges to his MSOP confinement were not reviewed (or

reviewable) on the merits in his appeal.[7]

---

[7] Petitioner contends that the Minnesota "Appeals Court <u>vacated the change of venue</u> for improper jurisdiction, thereby eliminating Petitioner's due process right to challenge on appeal Grounds One to Four [of the current petition], the portion of the case for his release from civil commitment for cruel or unusual abuses by MSOP employees which was transferred by change of venue to Carlton County District Court." (Amended Petition, p. 12, [emphasis added].) However, that is an incorrect description of the Minnesota Court of Appeals' decision. The Court of Appeals vacated an anomalous dismissal order that was erroneously entered in Carlton County <u>before</u> Judge Martin transferred the unresolved portion of Petitioner's state habeas corpus petition. Judge Martin's transfer order, on other hand, was <u>not</u> vacated on appeal; <u>it was affirmed</u>. Thus, the Minnesota Court of Appeals did <u>not</u> "eliminat[e]" the claims that were transferred to Carlton County.

In sum, Petitioner has not shown that he has exhausted his state court remedies for any of his current constitutional challenges to his ongoing confinement at MSOP. He may have tried to present those challenges in his state habeas corpus petition, but any such claims were transferred to Carlton County without being adjudicated on the merits. No constitutional challenges to Petitioner's MSOP confinement were considered or decided by Judge Martin, or by the Carlton County District Court, or by the Minnesota Court of Appeals in Favors, 2012 WL 2079848. Indeed, based on Petitioner's extensive submissions in this case, it appears that no Minnesota state court has ever addressed the merits of any of his current constitutional challenges to his ongoing confinement at MSOP.

Thus, the Court concludes that Petitioner has not satisfied the exhaustion of state court remedies requirement for any of the claims presented in his current habeas corpus petition. If those claims are still pending in the state district court for Carlton County pursuant to Judge Martin's transfer order, (as suggested by Petitioner's submissions), then Petitioner will have to pursue his claims in that Court, and, if necessary, in subsequent appeals to the Minnesota Court of Appeals and the Minnesota Supreme Court.[8] In any event, the claims presented in Petitioner's current habeas corpus petition cannot be entertained here, because those claims have never been fairly presented to, and decided on the merits by, the highest court of the State of Minnesota. O'Sullivan, supra; Baldwin, supra. The Court must therefore recommend that the current petition be

---

[8] If Petitioner's current constitutional claims have not yet come before the Carlton County court for a decision on the merits, then Petitioner will have to renew his efforts to bring his claims before that court, (and the state appellate courts), in order to satisfy the exhaustion requirement.

summarily dismissed.

However, it will be recommended that this case be dismissed <u>without prejudice</u>, so that Petitioner can attempt to pursue his currently unexhausted claims in the Minnesota state courts. See <u>Nelson v. Solem</u>, 714 F.2d 57, 60 (8th Cir. 1983) ("[b]ecause there has been no showing that further resort to state procedures for post-conviction relief would be futile, we affirm the district court's decision to dismiss [the] habeas petition without prejudice for lack of exhaustion").[9] Petitioner may return to federal court, (if necessary), after the state courts, <u>including the Minnesota Supreme Court</u>, have reviewed and decided all of the claims that he seeks to present in federal court. See <u>Ashker v. Leapley</u>, 5 F.3d 1178, 1180 (8th Cir. 1993); <u>see also Nelson, supra</u>.[10]

---

[9] If the state courts were to reject Petitioner's presently unexhausted claims because of a state procedural rule, those claims would be procedurally defaulted, and they would not be reviewable in a future federal habeas proceeding, except upon a showing of sufficient cause and prejudice to excuse the procedural default, or clear proof of "actual innocence." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). <u>See also Jones v. Jerrison</u>, 20 F.3d 849, 853 (8th Cir. 1994), ("[f]ederal courts will not review a procedurally defaulted claim because 'a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance'"), quoting <u>Coleman</u>, 501 U.S. at 732. As of now, of course, this Court has no way of knowing just how the Minnesota state courts might deal with any claims Petitioner might attempt to bring before them.

[10] To be clear, the Court is <u>not</u> suggesting that any of Petitioner's current habeas corpus claims might ultimately be successful. Petitioner seems to believe that if his federal constitutional rights were violated during the course of his confinement, then he must necessarily be released from MSOP. However, the Petitioner's reasoning does not appear to find support in a cursory review of case law. When a state detainee's constitutional rights have been violated during the course of his confinement, the customary remedy is a judgment granting compensatory damages, (or perhaps injunctive relief, if the violation is still ongoing), in a civil rights action brought under 28 U.S.C. § 1983. State detainees normally are <u>not</u> entitled to a writ of habeas corpus effecting release from custody based on claims that arose during confinement. See e.g., <u>Gomez v. United States</u>, 899 F.2d 1124, 1126 (11th Cir. 1990) ("even if a prisoner

---

proves an allegation of mistreatment in prison that amounts to cruel and unusual punishment, he is not entitled to release," but rather "[t]he appropriate... relief from prison conditions that violate the Eighth Amendment during legal incarceration is to require the discontinuance of any improper practices, or to require correction of any condition causing cruel and unusual punishment"). Thus, even if Petitioner can ultimately prove that someone at MSOP violated his constitutional rights under the Eighth or Fourteenth Amendments, it does not automatically follow that he would be entitled to a writ of habeas corpus that would release him from his MSOP confinement.

Having determined that this action must be summarily dismissed due to non-exhaustion, the Court will further recommend that Petitioner's pending applications to proceed in forma pauperis, (Docket Nos. 2 and 7), and his pending motion for appointment of counsel, (Docket No. 8), also be summarily denied. See Kruger v. Erickson, 77 F.3d 1071, 1074, n. 3 (8th Cir. 1996) (per curiam) (IFP application should be denied where habeas petition cannot be entertained); Edgington v. Missouri Dept. of Corrections, 52 F.3d 777, 780 (1995) (appointment of counsel should be considered if the claimant has stated a facially cognizable claim for relief).

## III.  CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide this case differently than it has been decided here.  Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about this case that warrants appellate review. It is therefore recommended that Petitioner should not be granted a COA in this matter.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's amended petition for a writ of habeas corpus, (Docket No. 6), be **DENIED**;

2. Petitioner's applications to proceed in forma pauperis, (Docket Nos. 2 and 7), be **DENIED**;

3. Petitioner's motion for appointment of counsel, (Docket No. 8), be **DENIED**;

4. This action be **DISMISSED WITHOUT PREJUDICE**; and

5. Petitioner should **NOT** be granted a Certificate of Appealability.

Dated: April 3, 2013
s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

# N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 17, 2013**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.